UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEVERLY LeMONS,

               Plaintiff,

                           Case No. 19-CV-10504
vs.

                           HON. GEORGE CARAM STEEH

HOME DEPOT USA, INC.,

               Defendant.
_____/

ORDER DENYING PLAINTIFF'S MOTION TO
AMEND [ECF No. 28] AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [ECF No. 19]

This case is before the court on Defendant Home Depot USA, Inc.'s

("Home Depot") motion for summary judgment (doc. 19) and Plaintiff

Beverly LeMons' motion for leave to amend her complaint (doc. 28).  The

court has determined that the pending motions may be resolved without

oral argument.  For the reasons stated below, Plaintiff's motion for leave to

amend the complaint is DENIED and Defendant's motion for summary

judgment is GRANTED.

- 1 -

## FACTUAL BACKGROUND

On November 15, 2015, Plaintiff went to the Home Depot in
Southfield, Michigan to purchase a security bar for her window.  Plaintiff
shopped for 20 to 25 minutes, putting the items she wanted to purchase in
the main compartment of her shopping cart and setting her purse in the
front of the cart.  Plaintiff testified that she was able to see where she was
going while she pushed the cart through the store.

Plaintiff waited in line at the checkout counter behind two other
customers.  Because the cart was heavy, instead of putting her hands on
the middle of the handle to push it, Plaintiff had one hand on each side of
the cart in order to guide, steer and direct the shopping cart.  As Plaintiff
pushed the cart forward in the checkout line, her hand got caught between
her cart and the gate rail in the cashier's lane.  Plaintiff testified that the
gate rail had a sharp hook connected to it that lacerated her hand and
caused nerve damage.  Plaintiff stated that she did not see the gate rail
until after she was injured.

## STANDARD FOR LEAVE TO AMEND

Leave to amend pursuant to Fed. R. Civ. P. Rule 15 is to be freely
given when justice requires.  The decision to grant or deny leave to amend

a complaint remains strictly within the court's discretion. *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986).  The court may deny leave to amend for reasons including "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment."  *Perkins v. Am. Elec. Power Fuel Supply, Inc.*,  246 F.3d 593, 605 (6th Cir. 2001).

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Tolan v.* Cotton, 572 U.S. 650, 660 (2014); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial."  *First Nat'l*

Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

ANALYSIS

I.    Motion for Leave to Amend

Plaintiff filed her first amended complaint, alleging separate counts of negligence and nuisance, on November 29, 2018 in Wayne County Circuit Court.  Defendant timely removed the case to federal court on the basis of diversity jurisdiction.  After the close of discovery, Defendant filed a motion for summary judgment, arguing in part that Plaintiff's nuisance and negligence claims should be merged into one claim for premises liability.  Plaintiff responded by filing a motion for leave to amend her complaint under Federal Rule of Civil Procedure 15(a)(2).

Plaintiff agrees that her negligence claim is more properly brought as a premises liability claim.  When an injury is claimed to be caused by a

dangerous condition on the land, it sounds in premises liability rather than ordinary negligence. *Kachudas v. Invaders Self Auto Wash, Inc.*, 486 Mich. 913, 914 (2010). Plaintiff seeks leave of the court to amend her complaint to replace her negligence claim with a premises liability cause of action. Plaintiff does not seek to amend her nuisance count.

As alleged in the First Amended Complaint, while Plaintiff was shopping at Defendant's store, she injured her right hand on a gate. (First Amended Complaint, ¶¶ 6-7). The negligence claim states that Defendant owed a duty to warn her of dangers and to make its premises safe. (*Id.*, ¶ 11). The allegations taken as a whole, and not the labeling of the claim, establish the nature of the cause of action. *Attorney General v. Merck Sharp & Dohme Co.*, 292 Mich. App. 1, 9-10 (2011) ("a court is not bound by a party's choice of labels. Rather, we determine the gravamen of a party's claim by reviewing the entire claim[.]"). Plaintiff's negligence claim, as alleged, is clearly a claim of premises liability. Amendment of the complaint is not necessary.

In her proposed amended complaint, Plaintiff also seeks to add new allegations of damages. Specifically, Plaintiff seeks to claim damages for fright and shock, embarrassment, humiliation, mortification, disfigurement,

an aggravation of pre-existing ailments or conditions, and a loss of earnings capacity.

Notice and prejudice to the nonmoving party are "critical factors" to the determination of whether a motion for leave to amend should be granted. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001). Plaintiff waited until after the close of discovery, and after a dispositive motion was filed, to seek leave to assert these new damages. Plaintiff's initial disclosures identified only wage loss, out-of-pocket medical expenses, claimed non-economic damages, and two medical liens. In her deposition, Plaintiff confirmed her alleged wage loss claim and testified she was not claiming any other economic expenses aside from those related to her medical bills. Plaintiff never indicated she experienced fright, shock, embarrassment, humiliation or mortification, nor did she testify that she was disfigured or that a pre-existing condition had been aggravated. The only testimony that Plaintiff gave regarding damages not previously identified was that she believed her cortisone shots were discoloring her skin.

The court finds that Plaintiff's request for leave to amend to add the additional categories of damages is prejudicial as well as futile. This conclusion is subject to the caveat that to the extent Defendant has been

put on notice of specific damages during discovery, such as the discoloration of Plaintiff's skin, the court would entertain motions in limine regarding the admissibility of such evidence.

Plaintiff's motion for leave to amend is DENIED.

II.   Motion for Summary Judgment

Federal courts sitting in diversity apply the state's choice of law provisions.  *Gass v. Marriott Hotel Servs. Inc.*, 558 F.3d 419, 425 (6th Cir. 2009).  Under Michigan choice of law provisions, "a tort claim filed in a Michigan court will be governed by Michigan law[.]"  *Id.*  As discussed above, Plaintiff's negligence claim is based on an alleged condition on the land and therefore sounds in premises liability.  *Wilson v. BRK, Inc.*, 328 Mich. App. 505, 512 (2019).

A.   Premises Liability

In general, a property owner owes a duty to an invitee to exercise reasonable care to protect that invitee from an unreasonable risk of harm caused by a dangerous condition on the premises.  *Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 609 (1995).  This duty encompasses not only warning invitees of any known dangers, but there is an additional obligation to make the premises safe.  *Price v. Kroger Co. of Michigan*, 284 Mich. App. 496,

500 (2009) (citations omitted).  However, the premises owner's general duty to warn or to protect an invitee does not extend to dangers that are open and obvious.  *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 516-17 (2001); *Joyce v. Rubin*, 249 Mich. App. 231, 236 (2002) ("[A]n invitor does not owe a duty to warn or to protect an invitee from dangers that are so obvious and apparent that an invitee may be expected to discover them himself.").

### 1.   Open and Obvious Doctrine

"Open and obvious dangers exist where the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them." *Joyce*, 249 Mich. App. at 238.  "The test to determine if a danger is open and obvious is whether an average user with ordinary intelligence would have been able to discover the danger and the risk presented upon casual inspection." *Id*. at 236.

The danger alleged in this case was a gate rail located in the checkout area.  The gate was painted bright orange and was described by Plaintiff as having a silver hook attached to it.  Defendant argues that the bright orange color of the gate renders it open and obvious.  Plaintiff takes

the position that the gate is not open and obvious where much of the trim and décor in the store reflects Home Depot's classic bright orange logo.

The fact that Plaintiff did not see the gate prior to the incident does not impact whether the gate was an open and obvious condition.  "[C]ourts are required to determine whether a **reasonable person** in the plaintiff's position" would have seen the condition.  *Laier v. Kitchen*, 266 Mich. App. 482, 498 (2005) (emphasis in original).  The objective test is not whether Plaintiff saw the alleged defect, but whether the average person of ordinary intelligence would see it.  *See Novotney v. Burger King Corp.*, 198 Mich. App. 470, 475 (1993).

While Home Depot's theme is the color orange, Plaintiff could not identify any other orange-colored items in the checkout aisle, aside from the gate.   The gate, due to both its color and the fact that photographs show it was not hidden from view or otherwise obstructed, would be open and obvious to the reasonable invitee upon casual inspection. Furthermore, the average individual is certainly aware that pinching one's hand between a shopping cart and another vertical metal surface, such as the gate rail, can result in injury.

2.    <u>Special Aspects</u>

In order to prevail where a condition is open and obvious, a plaintiff must show that there were special aspects of the condition that created a "uniquely high likelihood of harm or that it was an unavoidable risk." *Joyce*, 249 Mich. App. at 242; *Lugo*, 464 Mich. at 518-519. Where the condition is neither remarkable nor unavoidable, the open and obvious doctrine bars liability. *Joyce*, 249 Mich. App. at 242.

Plaintiff argues that the special aspect in this case is the color of the gate rail because it creates a high likelihood of harm: "[w]ith numerous items, signage and property in the store reflecting the same Home Depot-themed bright orange, an average, reasonable person would not know that the gate was dangerous and would likely not be overly concerned about placing their hand near it."  (Doc. 27, PageID 522).  This argument does not prevail.  The fact that the gate is painted the store's signature color does not make it more of a danger where the gate itself does not pose a high likelihood of harm.

Plaintiff also identifies a hook attached to the gate as a special aspect that presented an unreasonably high risk of harm.  At her deposition, Plaintiff described the hook as "steel," "silver," "sharp-looking," and "little."

She was not able to describe where the hook was located on the gate or

how big it was:

> Q. When you were talking about the gate earlier you mentioned something about a hook. What can you tell me about that?
> A. It was a steel hook, that's what I got cut on.
> Q. Where was that located on the gate, if you know?
> A. It was a hook that came out and went down. That was a little hook that hooked into something else if it was going to be something connected to it.
> Q. Was it on the top of the gate?
> A. It was silver in color. It was the area where my finger got caught in it, it was steel.
> Q. How big of a hook was it?
> A. In terms of dimension and size? I don't know.

(LeMons dep., Doc. 27-4, PageID 651).  Plaintiff later described the hook

as something used as a latch so the aisle could be closed off.

> A. The hook that was connected to the gate that will allow you to pull the gate across to close off an aisle was steel. And it was like a hook going straight and coming down.
> Q. And so just to clarify that hook is connected to a portion of the gate that could be pulled across the aisle?
> A. Yes.
> Q. So –
> A. The gate was like in a -- I guess you'd say something that would pull out and connect to close off an aisle.

(*Id.* at 681-82).

Following the incident, Plaintiff filled out a Customer Incident

Statement.  She wrote that "the side rail bar caught my right hand", with no

mention of a hook.  (Doc. 31-6, PageID 815).  No pictures were taken of the gate on the date of the incident or at any other time.  Defendant avers that their gates use a tether system made up of a black box at the top of the gate which secures the two gates together with a cord.  (Doc. 31-4, PageId 811).  Plaintiff has no evidence to confirm that the gate rail which caused her injury had a hook attached to it, other than her own testimony. At the summary judgment stage, the court must view the facts in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.  Fed. R. Civ. P. 56(c).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  In this case, without evidence, such as a picture of the actual gate as it existed at the time of the incident, Plaintiff's version of the facts cannot be said to be contradicted by the record.

Accepting Plaintiff's description of the hook as true, a steel hook used to pull the gate rail across the aisle to latch it closed does not pose an unreasonable likelihood of harm to be a special aspect.  To qualify as a

special aspect, a plaintiff must present evidence that could establish "a risk of harm that is so unreasonably high that its presence is inexcusable, even in light of its open and obvious nature." *Hoffner v. Lanctoe*, 492 Mich. 450, 462 (2012). "Under this limited exception, liability may be imposed only for an 'unusual' open and obvious condition that is 'unreasonably dangerous' because it 'present[s] an extremely high risk of severe harm to an invitee' in circumstances where there is 'no sensible reason for such an inordinate risk of severe harm to be presented.'" *Id.* (quoting *Lugo*, 464 Mich. at 519 n.2). The hook as described by Plaintiff is not analogous to the thirty foot deep pit in the middle of a parking lot used as an example of a special aspect by the Michigan Supreme Court in *Lugo*.

Plaintiff also argues that the hook and gate posed an unavoidable risk because she had no choice but to walk by them as they were located in the checkout aisle. However, the incident video (Exhibit 4) establishes that Plaintiff had ample room to walk past the gate without coming into contact with it.

B. <u>Nuisance</u>

"In Michigan, a nuisance is predicated upon the existence of a dangerous condition." *Cavaliere v. Adults for Kids*, 149 Mich. App. 756,

763 (1986). "A public nuisance involves the unreasonable interference with a right common to all members of the general public." *Sholberg v. Truman*, 496 Mich. 1, 6 (2014) (quoting *Adkins v. Thomas Solvent, Co.*, 440 Mich. 293, 304 n.8). The term "unreasonable interference" includes conduct that: "(1) significantly interferes with the public's health, safety, peace, comfort, or convenience, (2) is proscribed by law, or (3) is known or should have been known by the actor to be of a continuing nature that produces a permanent or long-lasting, significant effect on these rights." *Cloverleaf Car Co. v. Phillips Petroleum Co.*, 213 Mich. App. 186, 190 (1995).

A private citizen may maintain an action for a public nuisance "where the individual can show he suffered a type of harm different from that of the general public." *Adkins*, 440 Mich. at 306 n.11. The categories of harm that the Michigan Supreme Court recognizes as a public nuisance are those that "harm the public health," "create an interference in the use of a way of travel," or "prevent the public from the peaceful use of their land and the public streets." *See Garfield Twp. v. Young*, 348 Mich. 337, 342 (1957). Construing Plaintiff's claim in the light most favorable to her, it appears that Plaintiff alleges that the gate rail and hook posed a nuisance to public health.

The orange gate, with the described hook, does not have a natural tendency to create a threatening or impending danger to the public health. The gate and hook are not proscribed by law, nor do they have a permanent and significant effect on the public generally. The general public at large does not encounter the gate, only Home Depot shoppers, a circumstance which does not provide grounds for a finding of a public nuisance. *See Fagan v. Speedway, LLC*, No. 15-10211, 2016 WL 2957929 at *5 n.5 (E.D. Mich. May 23, 2016) (crack in parking lot not a public nuisance); *Davis v. Wal-Mart Stores E., LP*, No. 18-13901, 2019 WL 6912703, at *3 (E.D. Mich. Dec. 19, 2019) (hangers on floor of store not public nuisance). Despite the fact that large numbers of customers visit the Home Depot location at issue, Plaintiff is the only person to have claimed an injury due to contact with the gate and/or hook, a factor tending to demonstrate a lack of any tendency to create a danger to the general public.

Michigan law distinguishes between ordinary negligence and claims arising from a condition on the land, but here there is no distinction between Plaintiff's nuisance claim and her premises liability claim. Plaintiff's public nuisance claim against Home Depot is merely a

restatement of her premises liability cause of action.  *See, e.g., Findling  v. Int'l Transmission Co.*, No. 04-72385, 2006 WL 1663296 at *1, n.2 (E.D. Mich. June 15, 2006).

Defendant's motion for summary judgment is GRANTED.

## CONCLUSION

For the reasons stated above, Plaintiff's motion to amend is DENIED and Defendant's motion for summary judgment is GRANTED.

Dated:  May 1, 2020

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 1, 2020, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk